UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

WINDSOR COLEMAN,

Plaintiff,

v.

WOLCOTT; TOMPROWSKI, JOHN
DOE/MR.H.; ANNUCCI; and
MARTUSCELLO,[1]

Defendants.

24-CV-6182-MAV
ORDER

---

## I. INTRODUCTION

*Pro se* plaintiff, Windsor Coleman, a prisoner at Midstate Correctional Facility ("Midstate"), filed an action in the Northern District of New York, *Santos et al. v. Parmitel et al.*, 9:23-CV-401-GTS-TWD ("Northern District Action") seeking relief under 42 U.S.C. § 1983. ECF No. 1. He also filed an application to proceed *in forma pauperis*, which was granted. ECF Nos. 7, 10. After Coleman filed an amended complaint, *see* ECF No. 14, the Northern District Court severed defendants Tomprowski, Wolcott, and John Doe/Mr. H, as well as all claims against them, and transferred these defendants and claims to this Court. ECF No. 36. Upon receipt of the transfer, the Clerk's Office opened this case ("24-CV-6182"). ECF No. 37.

---

[1] The caption is reproduced as it appears in the Court's electronic case management system ("CM/ECF").

On June 7, 2024, Coleman filed a second amended complaint in the Northern District action. 6:24-CV-6388-FPG, ECF No. 43. Shortly thereafter, the Northern District severed defendants Annucci and Martuscello and all claims against them and transferred them to this Court. ECF No. 45. Upon receipt of the transfer, the Clerk's Office opened case number 6:24-CV-6388-FPG ("24-CV-6388"). *Id.* at ECF No. 46.

The Court consolidated cases 24-CV-06388 (now closed) and 24-CV-6182 (lead case). ECF No. 61. The second amended complaint in 24-CV-6388 was docketed as the second supplement to the amended complaint in this action. ECF No. 14-3. Pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b), the court now screens the amended complaint, ECF No. 14, as supplemented, ECF Nos. 14-2 and 14-3, (collectively, the "amended complaint").

The severed claims transferred to this District allege violations of Coleman's rights under the First, Fourth, Fifth, Eighth, and Fourteenth Amendments arising from events which occurred at Attica Correctional Facility ("Attica"), Lakeview Shock Incarceration Correctional Facility ("Lakeview"), and Wende Correctional Facility ("Wende").

For the reasons that follow, Coleman's Eighth Amendment claims against Tomprowski and Annucci arising from his SHU confinement may proceed to service. His remaining claims are dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) with leave to amend.

## II. BACKGROUND

Coleman sues former commissioner of the New York State Department of Corrections and Community Supervision ("DOCCS"); former Commissioner of DOCCS, Anthony Annucci ("Annucci"); Superintendent of Attica, Julie Wolcott ("Wolcott"); current Commissioner of DOCCS, Daniel Martuscello III, ("Martuscello"); Attica Sergeant Tomprowski, ("Tomprowski"), and John Doe/Mr.H. (" Mr. H"), all for constitutional violations arising from events at Attica, Wende, and Lakeview.[2] The amended complaint alleges a litany of events occurring between August 10, 2022 and April 14, 2024. The exact dates of Coleman's incarceration at these three facilities, particularly after his initial period of incarceration at Attica are not well-defined. What is clear is that Coleman was incarcerated at Attica from August 10 through September 21, 2022; at Midstate from September 21, 2022 through December 14, 2023; at Lakeview beginning on December 15, 2023; at Wende beginning on or about February 26, 2024; and at Attica from March 5, 2024, through an unspecified date. ECF No. 14-3 at ¶¶ 6–7, 13–15.

### Attica: August 10 through September 21, 2022.

On August 10, 2022, Coleman was transferred from Auburn Correctional Facility ("Auburn") to Attica. ECF No. 14, ¶ 3. On August 11, 2022, Coleman was served with a misbehavior report carried over from Auburn, causing him to be placed

---

[2] At points in the amended complaint, it is difficult to identify which conduct arose in this District. Where possible, the Court has used attached grievances to assist in making that determination. If, however, the Court has misconstrued the locale of any of the alleged incidents, Coleman may remedy that in the second amended complaint.

in Special Housing Unit ("SHU") confinement with a cell shield "that contained feces, urine, [and] dirt stains." *Id.* at ¶¶ 4-5; ECF No. 14-3 at ¶ 3.[3] On August 11, 2022, Coleman complained to Tomprowski and requested a change of clothes and removal of the cell shield, as Coleman "did not receive a cell shield order." ECF No. 14 at ¶ 5. At the same time, he was also served with a misbehavior report from Auburn that resulted in a sentence of forty-seven months and twenty-nine days of SHU confinement following a hearing conducted by Stackowski, Attica's Deputy Superintendent of Security. *Id.* at ¶ 6; ECF No. 14-3 at ¶¶ 4–5.

In his grievance dated August 21, 2022, Coleman complained that he had been without a change of clothes or a bucket for hot water for eleven days and was being held without a cell shield renewal order. ECF No. 14. at p. 19–20.[4] Although Coleman also alleges that he was without a pillow for eleven days, this is not mentioned in any grievance. *Id.* at ¶ 11. Coleman's cell shield order was renewed by Wolcott at Tomprowski's recommendation from August 19, 2022, through August 26, 2022, and again thereafter through September 2, 2022. *Id.* at ¶ 10, 16. The grievance disposition

---

[3] A cell shield is a transparent covering for the front of a prison cell, "equipped to provide adequate ventilation." N.Y. Comp. Codes R. & Regs. Tit 7 § 305.6(a). They may be ordered by corrections staff "for good cause, including but not limited to . . . throwing . . . objects through the cell door." *Id.* at § 305.6(b)(1).

[4] In evaluating the sufficiency of Coleman's allegations, the Court has considered the exhibits attached to the amended complaint that are referenced therein. *See Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991)) ("[T]he complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.")). Coleman, however, has since filed at least 22 additional sets of "exhibits" in this case that are neither referenced in the amended complaint nor attached thereto. Because it would place an "unjustified burden on the court" to determine the relevancy of each document to the complaint as it would be "forced to select the relevant material from a mass of verbiage," these exhibits have not been considered. *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) (quoting 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1281, at 365 (1969)).

indicates that Coleman "had been given a change of clothes, buckets are on order, and a copy of the cell shield renewal was provided." *Id.* at 20.[5] Contrary to the disposition, Coleman alleges that he never received a change of clothing. *Id.* at ¶ 17.

On August 16, 2022, Coleman was placed on a "restricted diet." *Id.* at ¶ 7. The following day, Coleman informed Tomprowski that restricted meals were unlawful, and he was taken off the restricted diet before lunch that same day. *Id.* at ¶¶ 8-9.

On August 22, 2022, Coleman filed an Incarcerated Individual Claim Form, claiming that his personal property and legal mail had not been sent from Auburn. *Id.* at ¶ 12; Claim Form at ECF No. 14 page 56. That same day, he also submitted a law library request form. *Id.* at ¶13. When he did not receive the material he requested, on August 25, 2022, Coleman submitted a grievance that also complained that he had not seen a law library officer in "over a week" while housed in the SHU and was being denied access to courts. *Id.* at ¶ 15 and page 21. The grievance disposition indicates that there was no record of Coleman requesting law library services. *Id.* at p. 22.

On August 27, 2022, Coleman complained to the law library administrator. *Id.* at ¶ 19; letter at page 49. Coleman indicated that on the previous day, August 26, a law library officer refused to give him a library request form. *Id* at p. 43. Coleman believed this to be an act of retaliation. *Id.* He filled out additional request forms on

---

[5] The amended complaint and its supplement include attached exhibits. To the extent that the attached exhibits are relevant to the incidents described in the amended complaint and its supplement, the Court will consider them. *See Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) ("the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.").

September 5 and September 8, 2022, and filed another grievance regarding deficient law library services on September 6, 2022. *Id.* at ¶¶ 28–30, 33. The materials Coleman requested on August 22, 2022, were provided on September 8, 2022. *Id.* at ¶ 32. The materials requested on September 5 and September 8, 2022, were provided on September 11, 2022. *Id.* at ¶ 37.

On August 29, 2022, Coleman filed another grievance stating that he was being retaliated against as he was still in SHU with a cell shield covered in urine, feces, and dirt, and had only one pair of clothes and underclothes. *Id.* at p. 23. He had not been given hot water, was given limited toiletries (such as soap, deodorant, toothpaste, etc.), and had not received his personal property. *Id.* The grievance disposition indicates that Coleman was given several changes of clothes, a bucket, and was never denied toiletries. *Id.* at p. 24.

On August 30, 2022, Coleman wrote a letter to Wolcott and requested that she preserve certain video and audio evidence in relation to his litigation. *Id.* at ¶ 24. On August 31, 2022, Coleman filed another grievance requesting release from SHU. *Id.* at ¶ 25. Coleman alleged that he had been in SHU for more than fifteen consecutive days citing New York Correction Law § 137.[6] *Id.* at 25. In total, Coleman alleges that he spent forty-two days in SHU confinement at Attica. ECF No. 14-3 at ¶ 6.

On September 13, 2022, Coleman wrote to Wolcott indicating that he had not been provided with his personal property or a comb and toothpaste. ECF No. 14 at 51. He further indicated that the Westlaw application in the law library was

---

[6] The amended complaint uses SHU and segregated confinement interchangeably.

malfunctioning. *Id*. Coleman alleges that Mr. H. failed to provide notary services to him and failed to adequately investigate the issues Coleman raised regarding access to law library services. *See* ECF No. 14-2 at p. 5.

### SHU Confinement from August 2022 through June 2023

Coleman's claims against Annucci involve his SHU confinement and Annucci's failure to implement policies consistent with the New York State Humane Alternatives to Long-Term Solitary Confinement ("HALT") Act. ECF No. 14-3 ¶ 24. Coleman alleges that while he was in SHU confinement in alleged violation of the HALT Act, he could not attend programming, recreation, or work assignments; he did not have the opportunity to have good time restored; and, he was restrained during out-of-cell activities. *Id*. at ¶ 22. He claims that Annucci subjected him to cruel and unusual punishment by permitting him to remain in segregated confinement with various restrictions at Attica from August 10 through September 21, 2022, when he was transferred out of Attica, and thereafter through June 25, 2023,[7] by disregarding the provisions of the HALT Act. *Id*. at ¶¶ 22, 24–25.

### Strip Frisks at Attica, Lakeview, and Wende
### from February through March 2024

Coleman was transferred several times between September 2022 and March 2024 from Attica to Midstate to Lakeview, to Wende and back to Attica, and describes

---

[7] Although Coleman's SHU confinement continued through his incarceration at Midstate, which is located in the Northern District, the Court has addressed the claims arising from Annucci's failure to comply with the HALT Act in this District. The docket sheet in the Northern District Action confirms that Annucci was terminated from that action on June 20, 2024, the date the claims against him were transferred here.

being strip-frisked on at least four occasions: February 26 and March 4, 5, and 26, 2024. ECF No. 14-3 at ¶ 29. Specifically, the strip frisks that occurred on February 26, 2024, coincided with Coleman's transfer from Lakeview to Wende. *Id.* at ¶ 14. Coleman was frisked once at Lakeview and again upon arrival at Wende "without being given opportunity to be body scanned as an alternative." *Id.* He was strip frisked again on March 4, 2024, while being transferred to a step-down program. *Id.* at ¶ 15. The following day, he was transferred to Attica SHU and strip frisked again. *Id.* On March 26, 2024, Coleman missed a court appearance because he refused to be strip frisked. *Id.* at ¶ 17. Coleman describes the frisks as "degrading." *Id.* at ¶¶ 17, 29.

On March 22, 2024, Coleman filed a grievance regarding the strip frisks conducted by Attica corrections officers. He described being told "to bend at the waist and spread [his] ass cheeks," which was witnessed "by multiple officers." *Id.* at 58. Coleman requested to be body-scanned instead of strip frisked but was told that Attica did not have a body-scanner. *Id.* at 59. Coleman filed a second grievance on March 26, 2024, indicating that being strip frisked violated his religious beliefs. *Id.* On March 31, 2024, Coleman wrote a letter to Martuscello indicating that the strip frisks were an invasion of his privacy. *Id.* at ¶ 18.

Coleman requests money damages and injunctive relief "preventing . . . Martuscello's employees from utilizing restraints on plaintiff when participating in out-of-cell activities; commanding Martuscello to provide the plaintiff with six hours of out-of-cell activities; and forbid[ding] Martuscello's employees from conducting

strip frisks and in alternative utilize body scans when plaintiff is searched for contraband." *Id.* at 10.[8]

## III.  STANDARD OF REVIEW

### A.    Review Under the IFP Statutes

A court shall dismiss a complaint in a civil action in which a prisoner seeks redress from a governmental entity, or an officer or employee of a governmental entity, if the court determines the action "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b)(1)-(2); *see* 28 U.S.C. § 1915(e)(2)(B) (setting forth the same criteria for dismissal).

### B.    Pleading Standards

In evaluating a complaint, a court must accept all factual allegations as true and must draw all inferences in a plaintiff's favor. *See Larkin v. Savage*, 318 F.3d 138, 139 (2d Cir. 2003) (per curiam); *King v. Simpson*, 189 F.3d 284, 287 (2d Cir. 1999). Although "a court is obliged to construe [*pro se*] pleadings liberally, particularly when they allege civil rights violations," *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004), even a *pro se* complaint must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make "a short and plain statement of the claim showing that the pleader is entitled to relief." A

---

[8] To the extent the amended complaint seeks a "preliminary injunction" concerning these activities or others that are occurring at his current facility, ECF No. [14-3] at 10, Coleman may move for that relief in the appropriate forum.

complaint states a claim for relief if the claim is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In other words, although a *pro se* complaint need not provide every last detail in support of a claim, it must allege sufficient facts to support the claim. *See Shibeshi v. City of New York*, 475 F. App'x 807, 808 (2d Cir. 2012) (summary order) (concluding that district court properly dismissed a *pro se* complaint under § 1915(e)(2) because complaint did not meet pleading standard in *Twombly* and *Iqbal*); *accord Hardaway v. Hartford Pub. Works Dep't*, 879 F.3d 486, 489 (2d Cir. 2018) (setting forth same standard of review).

## C.    Leave to Amend

Generally, a court will afford a *pro se* plaintiff an opportunity to amend or to be heard prior to dismissal, "unless [it] can rule out any possibility, however unlikely . . . , that an amended complaint would succeed in stating a claim." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (internal quotation marks and citation omitted). But a court may deny leave to amend pleadings when any amendment would be futile. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993) (per curiam) ("Where it appears that granting leave to amend is unlikely to be productive[] . . . it is not an abuse of discretion to deny leave to amend.").

## D.    Section 1983 Claims

To state a claim under 42 U.S.C. § 1983, a plaintiff "must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. County of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875–76 (2d Cir. 1994)). Section 1983 "creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)).

To establish liability against an official under § 1983, a plaintiff must allege that individual's personal involvement in the alleged constitutional violation; it is not enough to assert that the defendant is a link in the chain of command. *See McKenna v. Wright*, 386 F.3d 432, 437 (2d Cir. 2004). Moreover, *respondeat superior* liability is unavailable in a § 1983 action. *See Hernandez v. Keane*, 341 F.3d at 137, 144 (2d Cir. 2003). "[T]here is no special rule for supervisory liability." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020). Rather, at the screening stage, a plaintiff must plausibly allege "that each Government-official defendant, through the official's own individual actions[] . . . violated the Constitution." *Id.* (quoting *Iqbal*, 556 U.S. at 676).

## IV. DISCUSSION

### A.    Eighth Amendment

Coleman alleges violations of the Eighth Amendment against Tomprowski, Wolcott, and Annucci based on conditions in his cell, inadequate nutrition, inadequate hygiene, and his continued confinement in SHU, with various restrictions

11

and loss of privileges, for more than fifteen consecutive days in violation of the HALT Act. ECF No. 14 at 12. As a convicted prisoner, Coleman's conditions of confinement claims are analyzed under the Eighth Amendment.

### 1.    Cell Conditions

"Under the Eighth Amendment, officials may not create inhumane prison conditions, deprive inmates, of basic necessities, or fail to protect their health or safety." *Barnes v. County of Monroe*, 85 F. Supp. 3d 696, 737 (W.D.N.Y. 2015) (quoting *Overton v. Bazzetta*, 539 U.S. 126, 137 (2003)). However, "because society does not expect or intend prison conditions to be comfortable, only extreme deprivations are sufficient to sustain a 'conditions of confinement' claim." *Blyden v. Mancusi*, 186 F.3d 252, 263 (2d Cir. 1999). To allege a plausible Eighth Amendment claim based on conditions of confinement, an inmate must plead that "(1) objectively, the deprivation the inmate suffered was sufficiently serious that he was denied the minimal civilized measure of life's necessities, and (2) subjectively, the defendant official acted with a sufficiently culpable state of mind such as deliberate indifference to inmate health or safety." *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) (alteration, internal quotations, and citation omitted).

"To meet the objective element, the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health." *Id.* "[T]here is no static test to determine whether a deprivation is sufficiently serious; [t]he conditions themselves must be evaluated in light of contemporary standards of decency." *Jabbar v. Fischer*, 683 F.3d 54, 57 (2d Cir. 2012)

(internal quotation marks and citation omitted). "To meet the subjective element, the plaintiff must show that the defendant acted with 'more than mere negligence.'" *Walker*, 717 F.3d at 125 (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). "The prison official must know of, and disregard, an excessive risk to inmate health or safety." *Jabbar*, 683 F.3d at 57 (citing *Farmer*, 511 U.S. at 837).

"[T]he regular conditions of SHU confinement do not violate the Eighth Amendment." *Encarnacion v. Goord*, No. 12-CV-6180 CJS, 2020 WL 6291473, at *11 (W.D.N.Y. Oct. 27, 2020). The conditions of confinement that Coleman alleges, however, appear to transcend the regular conditions of SHU confinement. For instance, Coleman alleges that he was without a change of clothes, hot water, a bucket, and had access to "limited cosmetics", *i.e.*, toiletries, for at least nineteen days. *See* ECF No. 14 at 23 (grievance filed on August 29, 2022). He also asserts that the cell shield was covered with urine, feces, and dirt from previous occupants, and this was not cleaned between August 10 and August 29, 2022. *See id*. Coleman does not allege that the shield was ever cleaned or that he ever received hygiene supplies, a change of clothes, or hot water. Thus, these conditions may have been present even longer, as he remained at Attica through September 21, 2022. ECF No. 14-3 at ¶ 7.

Inmates have the right to sanitary living conditions and the necessary materials to maintain adequate hygiene. *See Walker*, 717 F.3d at 127 ("[T]he failure to provide prisoners with toiletries and other hygienic materials may give rise to the level of a constitutional violation."); *see also Atkins v. County of Orange*, 372 F. Supp. 2d 377, 406 (S.D.N.Y. 2003) ("The failure to regularly provide prisoners with . . . toilet

articles including soap, razors, combs, toothpaste, [and] toilet paper . . . constitutes a denial of personal hygiene and sanitary living conditions."). Occasional or temporary deprivations of hygiene items, however, do not constitute deprivations of basic human needs to meet the objective component of the Eighth Amendment. *See Trammell v. Keane*, 338 F.3d 155, 165 (2d Cir. 2003) (deprivation of "toiletries for approximately two weeks—while perhaps uncomfortable" did not violate Eighth Amendment); *Fernandez v. Armstrong*, No. 3:02-cv-2252 (CFD), 2005 WL 733664, at *5–6 (D. Conn. Mar. 30, 2005) (up to sixteen-day deprivation of toothbrush, toothpaste, soap, and shampoo did not violate the Constitution); *Davidson v. Murray*, 371 F. Supp. 2d 361, 372 (W.D.N.Y. 2005) (finding that an Eighth Amendment violation was not established, based upon conditions "amount[ing] to no more than occasional or temporary deprivations of personal hygiene items, with no . . . indicat[ion] that plaintiff suffered any 'specific deprivation of a single human need' . . ., or other accompanying harm" (citation omitted)). The same holds true for unsanitary conditions. *See Florio v. Canty*, 954 F. Supp. 2d 227, 234 (S.D.N.Y. 2013) ("[E]xposure to . . . waste [that is] intermittent or limited to a matter of hours" generally does not violate the Eighth Amendment).

While the conditions to which Coleman was exposed may not be particularly extreme, given the alleged duration of his lack of access to clean clothes and toiletries and his close proximity to human waste on the cell shield, at this early stage, Coleman has pled facts sufficient to satisfy the objective prong. *See Townsend v. Sweet*, No. 3:19-CV-580 (SRU), 2019 WL 4139469, at *7 (D. Conn. Aug. 30, 2019) (permitting

Eighth Amendment conditions claim based on denial of hygiene items and clean clothing for several days to proceed on initial review); *Florio*, 954 F. Supp. 2d at 234 ("A Section 1983 claim will not lie for prison conditions that are merely unpleasant. However, chronic exposure to human waste will give rise to a colorable claim.").

Coleman has also satisfied the subjective prong. He alleges that he asked Tomprowski for a change of clothes on August 12, 2022, the day after he arrived at Attica. ECF No. 14 at ¶ 5. Coleman filed a grievance regarding his cell conditions, which was investigated on August 26, 2022, by "Sgt. T.," (Tomprowski) who determined that Coleman was given a change of clothes. ECF No. 14 at 19-20. He filed a second grievance on August 29, 2022, indicating that his cell shield was still filthy, he had not been given a bucket or change of clothes, and he had "limited cosmetics." *Id.* at 23. Tomprowski also investigated this grievance and determined that Coleman had been given clothes, a bucket, and was never denied toiletries. *Id.* at 24.

Contrary to Tomprowski's written investigative findings, Coleman alleges that Tomprowski "failed to remove and/or clean the feces, urine, and dirt-stained cell shield from [his] cell . . . failed to provide [him] with a change of clothing, hot water, soap, toothpaste, comb, and deodorant, . . . [and] failed to provide [him] with wholesome and nutritious food." *Id.* at 12.

Accepting Coleman's allegations, Tomprowski actively attempted to conceal the cell conditions that posed an excessive risk to Coleman's heath and took no action to remedy them. Therefore, Coleman's conditions of confinement claim against

Tomprowski regarding his cell conditions at Attica from August to September 2022 may proceed to service.[9]

Coleman, however, has not demonstrated Wolcott's personal involvement in any constitutional violation arising from his SHU confinement. Coleman alleges that he wrote a letter on August 30, 2022, to Wolcott telling her she would be liable in a lawsuit if she failed to preserve evidence. ECF No. 14 at ¶ 24, p. 49. He wrote her a second letter on September 13, 2022, indicating that he had not received personal hygiene items or his property. *Id.* at p. 51.

"Even before *Tangreti*, it was well-established that a supervisor's failure to respond to a letter of complaint does not provide a sufficient basis to find that the defendant was personally involved in the deprivation alleged, and the review, denial or affirmance of a denial of a grievance is insufficient to establish personal involvement of a supervisor in the denial of a constitutional right." *Lopez v. Chappius*, No. 6:17-CV-06305 EAW, 2021 WL 859384, at *2 (W.D.N.Y. Mar. 8, 2021) (internal citations and quotations omitted). Wolcott's receipt of communications from Coleman is not sufficient to establish her personal involvement in the underlying constitutional violation. Therefore, Coleman's Eighth Amendment claim is dismissed as against Wolcott, but he is granted leave to amend the claim.

## 2. Inadequate Nutrition

---

[9] Permitting this or any claim to proceed to service does not immunize it from a motion to dismiss or summary judgment motion. *See Jones v. Sullivan*, No. 9:19-CV-0025BKSCFH, 2020 WL 5792989, at *5 (N.D.N.Y. Sept. 29, 2020) ("A court's initial screening under § 1915(e) and/or § 1915A does not preclude a later dismissal under Fed. R. Civ. P. 12(b)(6).").

As with other cell conditions, to amount to a constitutional violation, "a deprivation of food or nutrients must create a serious danger to the health of the inmate." *Abdullah v. NYPD 30th Precinct*, 24-CV-0137 (LTS), 2024 WL 325385, at *6 (S.D.N.Y. Jan. 29, 2024). Coleman's sole allegation is that he was placed on a "restricted diet" for less than two days. ECF No. 14 at ¶ 7–9. Coleman, however, does not describe what the "restricted diet" entailed, only that it was prohibited. Without more, the amended complaint fails to plausibly allege that the restricted diet placed Coleman's health in serious danger, particularly given the limited duration it was in effect. *Cf. Hutto v. Finney*, 437 U.S. 678, 683, 686-87 (1978) (holding that a diet of less than 1,000 calories per day would be "intolerably cruel for weeks or months" to implicate the Eighth Amendment); *see Phelps v. Kapnolas*, 308 F.3d 180, 187 (2d Cir. 2002) (suggesting that placing an inmate on a nutritionally inadequate restricted diet for fourteen days was likely to cause serious harm).

Further, after Coleman informed Tomprowski that restricted diets were unlawful, the diet was immediately ceased. ECF No. 14 at ¶ 9. "Wholly absent" from the amended complaint are any allegations that Tomprowski or any other defendant "acted with a sufficiently culpable state of mind" in placing Coleman on a "restricted diet." *Richards v. County of Nassau*, 24-CV-7957 (GRB) (ARL), 2025 WL 51335, at *4 (E.D.N.Y. Jan. 8, 2025). Accordingly, this claim is dismissed with leave to amend.

### 3.    The HALT Act

The Court interprets the amended complaint as alleging that Annucci violated his rights under the Eighth Amendment by failing to comply with the HALT Act. In

17

particular, the amended complaint alleges that unlike his successor Martuscello, Annucci failed to promulgate regulations for SHU confinement in conformance with the HALT Act, resulting in Coleman serving a period of SHU confinement that spanned from August 10, 2022, to June 25, 2023, with a variety of restrictions and loss of privileges. ECF No. 14-3 at ¶¶ 21–25.[10] [11]

The HALT Act "was enacted by the New York State Legislature in 2021 and went into effect April 1, 2022." *Delgado v. State*, 82 Misc. 3d 307, 313 (N.Y. Ct. Cl. 2023). The HALT Act, among other things, limits segregated confinement to fifteen consecutive days and twenty days within any sixty-day period. *See N.Y. State Corr. Officers & Police Benevolent Ass'n, Inc. v. Hochul*, 607 F. Supp. 3d 231, 236 (N.D.N.Y. June 16, 2022) (describing the terms of the HALT Act generally); *see also* N.Y. Correct. Law § 137.

"[W]hether incarceration in the SHU violates the Eighth Amendment . . . depends on the duration and conditions of the confinement." *Gonzalez v. Hasty*, 802 F.3d 212, 224 (2d Cir. 2015). "An Eighth Amendment claim predicated on SHU confinement therefore typically accrues only after an inmate has been confined in the SHU for a prolonged period of time." *Id.*

---

[10] To the extent that Coleman "may be raising a state law claim alleging a violation of the HALT Act, this Court would not have jurisdiction over such a claim." *Hamilton v. Martucello*, No. 24-CV-6500-CJS, 2025 WL 713032, at *6 n.4 (W.D.N.Y. Mar. 5, 2025). Under N.Y. Corr. Law, § 24, federal district courts are divested of "subject matter jurisdiction over state law claims for money damages that are asserted against DOCCS employees who were acting in the scope of their employment when the alleged violation occurred." *Id.*

[11] The end of Coleman's SHU confinement appears to coincide with Martuscello's appointment as Acting DOCCS Commissioner in June 2023. See https://doccs.ny.gov/commissioner-daniel-f-martuscello-iii (last visited May 28, 2025).

At the screening stage, Coleman's allegations that his SHU confinement, lasting months and in contravention to the requirements of the HALT Act, suffice to state a colorable claim that may proceed to service against Annucci. *See Reynolds v. Arnone*, No. 3:13-CV-1465 (SRU), 2025 WL 974843, at *11 (D. Conn. Mar. 31, 2025) ("*Tangreti* did not immunize government officials who serve in supervisory roles from Section 1983 liability. *Tangreti* did not unsettle clearly established law that supervisory officials may be held liable for their own conduct. Nor did *Tangreti* hold that a government official in a supervisory position could not be held liable for their own conduct with respect to creating, adopting, or enforcing an unconstitutional policy."); *Brunache v. Annucci*, No. 22-CV-196 (JLS), 2023 WL 146850, at *12 (W.D.N.Y. Jan. 9, 2023) ("While *Tangreti* overruled *Colon*'s five-factor test, including factor (3)—the defendant created a policy or custom under which unconstitutional practices occurred, it did not suggest that a defendant who created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, cannot be found liable under Section 1983." (internal quotation marks and internal citations omitted)).[12]

### 4.    Strip Frisks

Coleman asserts this claim against Martuscello, Commissioner of DOCCS. Specifically, Coleman states that Martuscello acted with deliberate indifference in

---

[12] Coleman also alleges conditions of confinement claim against Mark Passage, but this claim appears to have arisen at Midstate. *See* ECF No. 14-2 at 5.

permitting degrading strip frisks and failing to promulgate regulations requiring body scanning instead. ECF No. 14-3 ¶¶ 29-30.

Under certain limited circumstances, the manner in which a search is conducted may give rise to an Eighth Amendment claim. *See Crawford v. Cuomo*, 796 F.3d 252, 258 (2d Cir. 2015) ("[A] search may not be undertaken maliciously or for the purposes of sexually abusing an inmate."). The "principal inquiry" a court must make "is whether the contact is incidental to legitimate official duties, such as a justifiable pat frisk or strip search, or by contrast whether it is taken to arouse or gratify the officer or humiliate the inmate." *Id.* at 257–58. "[P]rison officials looking for contraband may subject inmates to reasonable strip searches and cavity searches," but such searches "may not be undertaken maliciously or for the purposes of sexually abusing the inmate." Id. at 258. Strip frisks are unconstitutional where they do "not serve a legitimate penological goal, such as . . . to intimidate, harass, or punish a prisoner." *Jones v. City of New York*, 18-CV-1937 (VSB), 2020 WL 1644009, at *12 (S.D.N.Y. Apr. 2, 2020).

Coleman does not plausibly allege that that the strip frisk policy violates the Eighth Amendment or that he was subjected to malicious or abusive strip frisks. "A strip search without elements of sexual harassment, excessive force, or indeed any physical contact at all is not 'sufficiently serious' under the objective prong to support a claim based on cruel and unusual punishment under the Eighth Amendment." *George v. City of New York*, No. 12 Civ. 6365 (PKC) (JLC), 2013 WL 5943206, at *10 (S.D.N.Y. Nov. 6, 2013). None of these aggravating circumstances have been pled

here. Accordingly, to the extent that this claim is premised on an Eighth Amendment violation, it is dismissed, and Coleman is granted leave to amend.

**B.    First Amendment**

**1.    Retaliation**

Although Coleman broadly alleges that he was retaliated against by "Attica employees" for filing grievances, the only specific retaliation claim he currently pleads appears to be against Tomprowski for failing to address his cell conditions. ECF No. 14 at 12, 23.

"It is axiomatic that prison officials may not retaliate against prisoners for exercising their constitutional rights." *Grant* v. *Shields*, 1:19-CV-1188 EAW, 2022 WL3587754, at *3 (W.D.N.Y. Aug. 22, 2022). To allege a § 1983 retaliation claim, a prisoner must show: "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009).

Only "retaliatory conduct that would 'deter a similarly situated individual of ordinary firmness from exercising his constitutional rights'" constitutes an "adverse action". *Lashley v. Wakefield*, 483 F. Supp. 2d 297, 300 (W.D.N.Y. 2007) (alteration omitted) (quoting *Gill v. Pidlypchak*, 389 F.3d 379, 381 (2d Cir. 2004)). "This objective test applies even if the plaintiff was not himself subjectively deterred from exercising his rights." *Burroughs v. Mitchell*, 325 F. Supp. 3d 249, 280 (N.D.N.Y. 2018). Moreover, courts recognize that retaliation claims by prisoners are "prone to abuse"

since prisoners could potentially claim retaliation based on any decision they dislike. *Vazquez v. City of New York*, No. 1:21-CV-01573 (PAE)(VF), 2022 WL 2704763, at *13 (S.D.N.Y. June 17, 2022) ("A prisoner's claims of retaliation must be examined with particular care, however, because they are prone to abuse since prisoners can claim retaliation for every decision they dislike.") (quotation omitted), *report and recommendation adopted*, 2022 WL 2704469 (S.D.N.Y. July 11, 2022). "Accordingly, even though '[p]risoners . . . have a constitutional right of access to the courts and to petition the government for the redress of grievances, and prison officials may not retaliate against prisoners for the exercise of that right,' courts must examine a prisoner's retaliation claim with 'skepticism and particular care.'" *Speaks v. Saeed*, No. 14-CV-06826 (JMA)(AYS), 2022 WL 541767, at *7 (E.D.N.Y. Feb. 23, 2022) (quoting *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

While "the filing of prison grievances is a constitutionally protected activity," *Davis v. Goord*, 320 F.3d 346, 352–53 (2d Cir. 2003), Coleman's allegation that his grievances were a substantial motivating factor for the failure to provide him with clothing or toothpaste or to clean his cell shield are unsupported by any factual allegations. "Without any non-conclusory allegations that the grievances and the wrongful conduct are causally connected," Coleman fails to state a claim. *Herbert v. Raczkowski*, 24-CV-0485 (JLS), 2024 WL 3694215, at *8 (W.D.N.Y. Aug. 5, 2024); *see Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) ("[A] complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleadings

alone . . ."). At this stage, Coleman's retaliation claim is dismissed, but he is granted leave to amend this claim.

### 2.    Access to Courts (Library/Notary)

Coleman alleges this claim against Mr. H., who failed to provide him notary services and failed to remedy Coleman's concerns regarding the law library services. ECF No. 14 at 12.

The Constitution "does not require unlimited and unrestricted access to a law library at the demand of a prisoner." *Gamble v. City of New York ex rel. NYC Dep't of Corr.*, No. 04 Civ. 10203 (TPG), 2009 WL 3097239, at *6 (S.D.N.Y. Sept. 25, 2009) (internal quotation marks and citation omitted)). The right of access to courts requires states "to give prisoners a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Bounds v. Smith*, 430 U.S. 817, 825 (1977), *modified on other grounds by Lewis v. Casey*, 518 U.S. 343, 350 (1996).

To state a claim for denial of access to the courts, a plaintiff must allege facts showing that the defendant's conduct "was deliberate and malicious, and that the defendant's actions resulted in an actual injury to the plaintiff." *Banks v. County of Westchester*, 168 F. Supp. 3d 682, 692 (S.D.N.Y. 2016). To demonstrate actual injury, a plaintiff must allege that "the defendant's conduct frustrated the plaintiff's efforts to pursue a nonfrivolous claim." *Murray v. Noeth*, 6:19-CV-06342 EAW, 2025 WL 923255, at * 5 (W.D.N.Y. Mar. 27, 2025). "Mere 'delay in being able to work on one's

legal action or communicate with the courts does not rise to the level of a constitutional violation.'" *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003).

Coleman has failed to allege deliberate and malicious acts or actual injury in this case. By Coleman's own admissions, he eventually received the requested law library materials, albeit outside of a 24-hour period, and fails to point to any prejudice arising from this delay. *See Ramsay v. Coughlin*, 1 F. Supp. 2d 198, 205 (W.D.N.Y. 1998) (dismissing First Amendment access to courts claim based upon, *inter alia*, delayed notary services where the plaintiff could not demonstrate prejudice to any ongoing lawsuit).

Coleman has also failed to assert that delays in notary services prejudiced any ongoing case. In fact, Coleman attaches his filings from his Court of Claims action, which were returned because they were unverified, not because they were unnotarized. ECF No. 14 at 84. He makes no further claim that his attempts to file were rejected or that he was for some reason foreclosed from refiling his claim. *See Christopher v. Harbury*, 536 U.S. 403, 415 (2002) ("[T]he complaint must identify a remedy that may be awarded as recompense but not otherwise available in some suit that may yet be brought."). At this stage, Coleman has failed to state a claim for denial of access to courts, and this claim is dismissed with leave to amend.

### 3.    Access to Courts – Strip Frisks

Coleman also asserts that Martuscello denied him access to courts by requiring that he be strip frisked prior to his court appearances. ECF No. 14-3 at ¶ 31. Because Coleman refused to be strip frisked, he missed three court appearances.

Policies requiring strip searches on the way to and from court appearances have been found not to violate the Constitution because they "serve the legitimate penological purpose of preventing contraband from coming into and out of prisons and jails." *Thompson v. City of New York*, No. 16 Civ. 824 (PKC), 2017 WL 1929552, at *2 (S.D.N.Y. May 9, 2017). Coleman identifies no non-penological purpose for the strip frisks that he refused.

Nor does he allege that his failure to attend the court proceeding hindered his pursuit of a legal claim. *See Chinloy v. Seabrook*, No. 14-CV-350 (MKB), 2014 WL 1343023, at * 2 (E.D.N.Y. Apr. 3, 2014) (dismissing an access to courts claim for a missed court appearance where plaintiff pled no injury); *see also Dotson v. Farrugia*, No. 11 Civ. 1126 (PAE), 2012 WL 996997, at *6 (S.D.N.Y. Mar. 26, 2012) (dismissing an access to court claim where plaintiff alleged a missed housing court date yet did not provide "any information about the underlying claim at housing court" or allege that the underlying relief was denied to him). Therefore, this claim is dismissed with leave to amend.

## C.    Fourth Amendment – Strip Frisks

In addition to alleging an Eighth Amendment violation against Martuscello regarding the strip frisks, the amended complaint, which makes repeated references to violations of Coleman's privacy rights, ECF 14-3 at 8-9, asserts a Fourth Amendment violation.

"[I]nmates retain a limited right to bodily privacy under the Fourth Amendment." *Harris v. Miller*, 818 F.3d 49, 57 (2d Cir. 2016). "To state a cognizable

privacy claim, an inmate must allege that (1) 'he exhibited an actual, subjective expectation of bodily privacy,' and (2) prison officials 'lacked sufficient justification to intrude on the inmate's Fourth Amendment rights.'" *Telesford v. Annucci*, 693 F. App'x 1, 3 (2d Cir. 2017) (summary order) (alterations omitted) (quoting *Harris*, 818 F.3d at 57).

Coleman has attached the directive regarding strip frisks, Directive No. 4910: Control of and Search for Contraband. ECF No. 14-3 at 155. The directive states that "a strip frisk means a search of an incarcerated individual's clothes and body, including a visual inspection of body cavities." *Id.* at 161. Strip frisks are permitted upon a finding of probable cause to believe that there is contraband concealed within the inmate's body cavities. *Id.* at 162. The directive requires these searches to be conducted "in a manner least degrading to all involved." *Id.* at 163.

Pursuant to Directive 4910, strip frisks are permitted in several situations regardless of the existence of probable cause: (1) when an inmate is transferred from one DOCCS facility to another; (2) after contact visits; (3) upon reception to SHU or other Diversion Units; (4) upon departing SHU or other Diversion Units; (5) when being transferred from one SHU or Diversion Unit to another; (6) upon admission to a secure unit; (7) upon admission to a psychiatric unit; (8) upon return from temporary release or furlough; and (9) prior to departing on an escorted trip. *See Id.* at 167–68.

Nothing in the amended complaint suggests that the strip frisks described by Coleman were not conducted in compliance with Directive 4910. Indeed, the searches

he complains of appear to have been conducted when he was transferred from one DOCCS facility to another, from diversion program to diversion program, or was preparing to depart on an escorted trip—all of which would be permissible under Directive 4910.

"There is no question that strip searches may be unpleasant, humiliating, and embarrassing to prisoners, but not every psychological discomfort a prisoner endures amounts to a constitutional violation." *Miller v. Bailey*, No. 05-CV-5493 (CBA/LB), 2008 WL 1787692, at *9 (E.D.N.Y. Apr. 17, 2008). Certain strip frisks can be considered unreasonable, including redundant strip frisks where the inmate has no opportunity to secure contraband between the searches. *See Jones*, 2020 WL 1644009, at *13; *Bradshaw v. City of New York*, 15 Civ. 4638 (ER), 2018 WL 818316, at * 6 (S.D.N.Y. Feb. 9, 2018) ("[A] reasonable juror could conclude that [repeated searches while the inmate is confined and under surveillance] were unreasonable and violated [the plaintiff's] Fourth Amendment rights."). However, nothing Coleman alleges suggests that the strip frisks he experienced were unreasonable. Accordingly, this claim is dismissed with leave to amend.

## D.    Fourteenth Amendment

### 1.    Equal Protection

Coleman generally asserts that Annucci and Martuscello denied him equal protection: Annucci in connection with his purported failure to implement the HALT Act, and Martuscello in permitting the strip frisk policy. ECF No. 14-3 at ¶ 20. To state a colorable claim under the Fourteenth Amendment's equal protection clause,

a plaintiff must allege that: "(1) the person, compared with others similarly situated, was selectively treated, and (2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the person." *FSK Drug Corp. v. Perales*, 960 F.2d 6, 10 (2d Cir. 1992) (quoting *Wayte v. United States*, 470 U.S. 598, 608–09 (1985)).

Coleman pleads no facts suggesting that the strip frisk policy or his SHU confinement were discriminatory or that he was treated differently from other similarly situated inmates.[13] *See Cromwell v. Hendel*, 20-CV-317-LJV, 2022 WL 16540353, at *4 (W.D.N.Y. Oct. 28, 2022) (dismissing equal protection claim where plaintiff has pled no facts to suggest that any defendant discriminated against him); *see also Green v. Martin*, 224 F. Supp. 3d 154, 171 (D. Conn. 2016) (dismissing an equal protection claim where the plaintiff failed to allege that he was treated any differently from another prisoner in the context of prison searches). Accordingly, Coleman's equal protection claims against Martuscello and Annucci are dismissed with leave to amend.

### 2.    Due Process

Coleman does not expressly allege a violation of his due process rights; however, he mentions the Fourteenth Amendment under the claims against Wolcott and Tomprowski. ECF No. 14 at 12. To state a claim for the denial of due process, "a

---

[13] Among Coleman's grievances, he alleges at one point that the strip frisks were against his religion. ECF No. 14-3 at 59. He, however, does not raise any similar challenge in the amended complaint.

plaintiff must establish (1) that he possessed a liberty interest and (2) that the defendant(s) deprived him of that interest as a result of insufficient process." *Giano v. Selsky*, 238 F.3d 223, 225 (2d Cir. 2001). A liberty interest arises where the objected-to restraint "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

Coleman was served with a misbehavior report, and he was found guilty of the charges contained therein. He was sentenced to forty-seven months and twenty-nine days in SHU and served forty-two days of that sentence at Attica. During his SHU confinement at Attica, Wolcott and Tomprowski were also responsible for various cell shield orders for Coleman's cell. ECF No. 14 at ¶ 6, 10.

Even if Coleman has established a liberty interest in avoiding SHU confinement or in an unshielded cell, he fails to allege that he was deprived of those interests without proper process. Nor are there any allegations that Wolcott or Tomprowski had any personal involvement in his SHU confinement. Therefore, Coleman's claims against Tomprowski and Wolcott are dismissed with leave to amend

## E.    Fifth Amendment

Coleman states that Wolcott, Tomprowski, and Mr. H. violated his rights under the Fifth Amendment. ECF No. 14 at 12. The Fifth Amendment's due process clause only applies to the federal government, and there is no claim that Coleman's Fifth Amendment privilege against self-incrimination was violated. *See Vieira v. Honeoye*

*Cent. Sch. Dist.*, No. 09-CV-6163-CJS-JWF, 2013 WL 1915770, at *6 n.4 (W.D.N.Y. May 8, 2013). Accordingly, this claim is dismissed without leave to amend.

## V.  CONCLUSION

Coleman's Eighth Amendment claims against Tomprowski and Annucci arising from his SHU confinement may proceed to service. His remaining claims are dismissed with leave to amend.

Coleman may file a second amended complaint only as directed above **within forty-five days of the date of this Order**. The second amended complaint must comply with Rules 8 and 10 of the Federal Rules of Civil Procedure. Coleman is advised that an amended complaint is intended to **completely replace** the prior amended complaint in the action. "It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect." *Arce v. Walker*, 139 F.3d 329, 332 n. 4 (2d Cir. 1998) (*quoting Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977)). Therefore, the second amended complaint must include all allegations against each defendant so that the second amended complaint stands alone as the only complaint in this action.

## VI.  ORDER

IT IS HEREBY ORDERED that Coleman's Eighth Amendment claims against Tomprowski and Annucci arising from his SHU confinement may proceed to service; and it is further

ORDERED that Coleman is granted leave to file a second amended complaint as directed above by **no later than forty-five days after the date of this Order**; and it is further

ORDERED that the Clerk of the Court is directed to send Coleman with this Order a copy of the amended complaint (ECF. No. 14), a blank § 1983 complaint form, and the instructions for preparing an amended complaint; and it is further

ORDERED that in the event Coleman fails to file a second amended complaint as directed above within forty-five days of the date of this Order, the Clerk of Court is directed to cause the United States Marshals Service to serve copies of the summons, amended complaint (ECF No. 14), and this Order upon Tomprowski and Annucci, without Coleman's payment therefore, unpaid fees to be recoverable if this action terminates by monetary award in Coleman's favor, and the remaining claims will be dismissed with prejudice without further order of this Court;[14] and it is further

ORDERED that upon receipt of the summons and amended complaint, Annucci and Tomprowski shall answer or otherwise respond; and it is further

ORDERED that pursuant to *Valentin v. Dinkins*, the Court requests that the New York State Attorney General's Office ascertain the full name and last known address for Sergeant Tomprowski and the last known address of Annucci. The Attorney General's Office need not undertake to defend or indemnify the defendant

---

[14] If Plaintiff files an amended complaint as directed in this Order, service will be deferred until such time as the Court has screened the amended complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(a)-(b).

at this juncture. This order merely provides a means by which Coleman may name and properly serve them as instructed by the Second Circuit in *Valentin*.

The Attorney General's Office shall produce the information specified above within thirty days of the date of this Order, either electronically in CM/ECF by selecting "*Valentin* Response" under "Discovery Documents" or by mail to the *Pro Se* Litigation Unit, United States District Court, 100 State Street, Rochester, New York 14614;[15] and it is further

ORDERED that the Clerk of Court is directed to send a copy of the amended complaint (ECF No. 14) and this Order to Ted O'Brien, Assistant Attorney General in Charge, Rochester Regional Office, at Ted.O'Brien@ag.ny.gov, and he is directed to provide the *Valentin* information directed above; and it is further

ORDERED that, pursuant to Western District of New York Local Rule of Civil Procedure 5.2(d), Coleman must notify the Court in writing if his address changes. Failure to do so may result in dismissal of the action with prejudice.

SO ORDERED.

Dated : June _16_, 2025
      Rochester, New York

HON. MEREDITH A. VACCA
UNITED STATES DISTRICT JUDGE

---

[15] Responses filed electronically in CM/ECF are reviewed by Court personnel before being made public.